1  ALEXIS GALINDO (SBN 136643)
2    Email: agalindo@cgsattys.com
   MAXIMILIANO GALINDO (SBN 328187)
3    Email: mgalindo@cgsattys.com
4  CURD GALINDO & SMITH LLP
   301 East Ocean Blvd., Suite 1700
5  Long Beach, CA 90802-4828
6  Telephone:  (562) 624-1177
   Facsimile:    (562) 624-1178
7  www.cgsattys.com

8

9  Attorneys for Plaintiffs
   VANESSA AVALOS, Individually and as Successor in Interest to THE ESTATE OF
10 ERNESTO ISAIAH AVALOS, DECEASED.

11

12              **UNITED STATES DISTRICT COURT**

13          **EASTERN DISTRICT OF CALIFORNIA**

14

| 15  VANESSA AVALOS, Individually and as Successor in Interest to THE ESTATE OF ERNESTO ISAIAH AVALOS, DECEASED. | **CASE NO:** |
|---|---|
| Plaintiffs, <br><br> vs. <br><br> COUNTY OF SAN JOAQUIN through its Sheriff's Dept; PATRICK WITHROW, Individually and in his official capacity as San Joaquin County Sheriff; MARY CEDANA, R.N.; SARAI HARDWICK, L.V.N.; MANDEEP KAUR, R.N.; ROBYN MENDOZA, ANDREA LOPEZ,  SGT. IZAGUIRRE, AND JOHNNIE MORRIS, <br><br> Defendants. | **COMPLAINT FOR DAMAGES  AND DEMAND FOR JURY TRIAL** <br><br> 1. 42 U.S.C. § 1983 – Civil Rights Violations <br> 2. 42 U.S.C. § 1983 – Supervisory Liability <br> 3. 42 U.S.C. § 1983 – Monell <br> 4. California Govt Code §845.6 – Failure to Summon Medical Care <br> 5. Negligence-Wrongful Death <br> 6. Medical Negligence <br> 7. 42 U.S.C. § 1983 – Civil Rights Violations-Substantive Due Process <br> 8. 42 U.S.C. § 1983 – Civil Rights Violations- Failure to Protect <br> 9. Bane Act-Survival Claim |

Plaintiffs, by and through their attorneys, CURD, GALINDO & SMITH, LLP, submit the following Complaint for damages and state as follows:

## JURISDICTION

1.  The complaint is a civil rights wrongful death/survival action arising under 42 U.S.C. §§ 1983 and 1988, and the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, the Americans with Disabilities Act ("ADA") – 42 U.S.C. § 12132 and 28 C.F.R. §35, et seq., the Rehabilitation Act ("RA") – 29 U.S.C. § 794, et seq., and the laws and Constitution of the State of California.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343. Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367, to hear and decide claims arising under state law.  The amount in controversy herein, excluding interest and costs, exceeds the minimum jurisdictional limit of this Court.

## INTRADISTRICT ASSIGNMENT

2.  A substantial part of the events and/or omissions complained of herein occurred in the San Joaquin County Jail, San Joaquin, California, and this action is properly assigned to the Sacramento Division of the United States District Court for the Eastern District of California.

## PARTIES AND PROCEDURE

3.  Plaintiff, VANESSA AVALOS, the biological mother of ERNESTO ISAIAH AVALOS  brings these claims individually for wrongful death and violation

of her personal rights, and as successor in interest for ERNESTO ISAIAH AVALOS

pursuant to California Code of Civil Procedure §§ 377.10 et seq.

4.    Plaintiff, VANESSA AVALOS resides in the County of Los Angeles,

State of California and brings the claims under state and federal law.

5.    Plaintiff VANESSA AVALOS, the biological mother of ERNESTO

ISAIAH AVALOS, brings the survival action pursuant to California Code of Civil

Procedure §§ 377.20 et seq. All Plaintiffs also bring claims pursuant to California

Code of Civil Procedure §§ 377.60 et seq. for wrongful death and claims for

violations of their personal federal constitutional rights of familial association. All

Plaintiffs bring their claims individually, and Plaintiff VANESSA AVALOS, as

parent who received financial/economic support from, ERNESTO ISAIAH

AVALOS, brings claims for wrongful death, and survival claims, on the basis of 42

U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights

law, and California law.

6.    On December 15, 2021 a proper and timely tort claim was presented to

the COUNTY OF JOAQUIN on behalf of Plaintiffs and ERNESTO ISAIAH

AVALOS, pursuant to Government Code § 910 et seq. The claims were denied on

December 20, 2021, and this action was thereafter timely filed within all applicable

statutes of limitation.

7.     Despite Plaintiffs' timely and proper requests through their counsel, and without any legitimate basis, County of San Joaquin has refused to produce ERNESTO ISAIAH AVALOS's inmate central records and medical records that would have provided additional facts for this Complaint and would have identified additional individuals responsible for violations of ERNESTO ISAIAH AVALOS's rights.  The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants named herein as DOES 1 through 10 are unknown to Plaintiffs, who therefore sue said Defendants by said fictitious names. Plaintiffs will amend this Complaint to show said Defendants' true names and capacities when the same have been ascertained.  Plaintiffs are informed, believe, and thereon allege that all Defendants sued herein as DOES are in some manner responsible for the acts, omissions, and injuries alleged herein.

8.     Plaintiffs allege, on information and belief, that each of the Defendants sued herein were wrongfully, deliberately indifferently, unreasonably, negligently, and/or otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiffs and/or ERNESTO ISAIAH AVALOS.  Further, one or more DOE Defendants was at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including both the individually named and DOE Defendants.

9.      Plaintiffs are informed, believe, and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of that relationship.  Plaintiffs are further informed, believe, and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may hereinafter be otherwise, specifically alleged.  At all material times, each Defendant was an integral participant, jointly and fundamentally engaged in constitutionally violative, unlawful, and/or tortious activity, resulting in the deprivation of Plaintiffs' and ERNESTO ISAIAH AVALOS's constitutional rights and other actionable harm.

10.      Based on information and belief, Plaintiffs allege that Defendant MARY CEDANA, R.N., was at all material times employed by Defendant COUNTY's jail Correctional Health Care services, and acted within the course and scope of that employment. As set forth below, Defendant CEDANA permitted LVNs to work outside of the scope of their legal practice and without adequate supervision, failed to properly assess and treat decedent AVALOS, failed to create a treatment plan for him, and failed to inform any physician, mid-level provider, or mental health

nurse about his serious mental health needs, all with deliberate indifference to decedent's needs.

11.     Based on information and belief, Plaintiffs allege that Defendant SARAI HARDWICK, L.V.N., was at all material times employed by Defendant COUNTY's jail Correctional Health Care services, and acted within the course and scope of that employment. As set forth below, Defendant HARDWICK worked outside her legal scope of practice as a Licensed Vocational Nurse when she performed the mental health suicide risk assessment on decedent AVALOS when he was booked in the jail and failed to request a properly licensed psychiatric nurse to conduct the assessment, and failed to inform any physician, mid-level provider, or Registered Nurse about his severe mental health needs, all with deliberate indifference to decedent AVALOS's serious psychiatric and medical needs.

12.     Based on information and belief, Plaintiffs allege that Defendant MANDEEP KAUR, R.N., was at all material times employed by Defendant COUNTY's jail Correctional Healthcare services, and acted within the course and scope of that employment. As set forth below, Defendant KAUR permitted LVNs to work outside of their legal scope of practice and without adequate supervision, failed to properly assess and treat decedent AVALOS when he requested medical attention.

13.     Based on information and belief, Plaintiffs allege that Defendant ROBYN MENDOZA, NP, was at all material times employed by Defendant

COUNTY's jail Correctional Health Care services, as a Nurse Practitioner, and acted within the course and scope of that employment. As set forth below, Defendant MENDOZA failed to provide decedent medical attention when he requested it and MENDOZA, failed to create a treatment plan for him,  all with deliberate indifference to his serious medical needs.

14.     Based on information and belief, Plaintiffs allege that Defendant SHERIFF PATRICK WITHROW (hereinafter "Sheriff WITHROW"), was and is the Sheriff and administrator of the San Joaquin County Jail and custodian of the pre-trial detainees within it, along with DOES 1-10, who were deputies, sergeants, captains, lieutenants, commanders and undersheriffs and/or civilian employee agents, policy makers and/or agents and representatives of SAN JOAQUIN COUNTY and the correctional staff.

15.     Defendant SHERIFF WITHROW was charged by law and was responsible with the administration of defendant SAN JOAQUIN COUNTY and its employees, and for the supervision, training and hiring of persons, agents and employees working within the county jail, including the sworn officers and deputies, as well as the civilian staff and DOES 1-10, inclusive.

16.     Sheriff WITHROW is sued in his individual capacity as a supervisory official for his own culpable action or inaction in the training, supervision, or control of his subordinates, or for his acquiescence in the constitutional deprivations which

1  this Amended Complaint alleges, or for conduct that showed a reckless or callous

2  indifference to the rights of mentally ill inmates. Sheriff WITHROW's affirmative

3

4  conduct involves his failure to implement and ensure enforcement of policies, rules,

5  or directives that set in motion a series of acts by others which he knew or reasonably

6  should have known, would cause others to inflict the constitutional injury. Sheriff

7

8  WITHROW failed to implement a policy which mandated that the SAN JOAQUIN

9  COUNTY Jail staff would insure that a pre-trial detainee or inmate's mental and

10  medical condition was properly charted so that upon transfer to a different facility the

11

12  inmate would receive adequate and appropriate care.

13      17.      Plaintiffs are informed and believe that defendants SGT.

14  IZAGUIRRE, JOHNNIE MORRIS, and ANDREA LOPEZ were, at all relevant

15  times herein, the Commanders, Supervisors and/or Supervisors of Personnel, of the

16

17  San Joaquin County Jail and were the agents, servants and employees of COUNTY

18  OF SAN JOAQUIN. At all times relevant herein, these defendants were responsible

19

20  for the training and supervision of all San Joaquin County Jail custodial employees

21  and/or agents. These Defendants were also responsible in some capacity for the

22

23  promulgation of the policies and procedures and allowances of the practices and

24  customs pursuant to which the acts alleged herein occurred. Defendants are sued

25  herein in their individual capacities as Commanders, Supervisors and/or Supervisors

26

27

28

of Personnel of San Joaquin County Jail under the color of state law within the meaning of 42 U.S.C. § 1983.

18.    At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

19.    This complaint may be pled in the alternative, pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure.

20.    Defendants are sued under Title 42 U.S.C. § 1983 for violations of the First, Fourth, and Fourteenth Amendments of the United States Constitution, the Americans with Disabilities Act, 42 U.S.C. § 12131 (2), § 504 of the Rehabilitation Act of 1973, California state law, the California Tort Claims Act, and the Government Code for the acts and omissions of public employees Defendants, and each of them, who at the time they caused Plaintiffs' and ERNESTO ISAIAH AVALOS 's injuries, damages and death were duly appointed, qualified and acting officers, employees, and/or agents of SAN JOAQUIN COUNTY.

21.    Each of the Defendants caused and is responsible for the unlawful conduct and resulting harm by, inter alia, personally participating in the conduct, or acting jointly and in concert with others who did so, by authorizing, acquiescing, condoning, acting, omitting or failing to take action to prevent the unlawful conduct, by promulgating or failing to promulgate policies and procedures pursuant to which the unlawful conduct occurred, by failing and refusing to initiate and maintain

adequate training, supervision and staffing with deliberate indifference to Plaintiffs' rights, by failing to maintain proper and adequate policies, procedures and protocols, by failing to ensure ERNESTO ISAIAH AVALOS was given effective medical and mental health care, and by ratifying and condoning the unlawful conduct performed by agents and officers, deputies, medical providers and employees under their direction and control.

22.    Whenever and wherever reference is made in this Complaint to any act by Defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendant individually, jointly or severally.

## **GENERAL ALLEGATIONS**

### **(a) Deliberate Indifference and Failure to Provide ERNESTO ISAIAH AVALOS Reasonable Medical and Mental Health Care and Supervision.**

34.    Defendant PATRICK WITHROW ("Sheriff WITHROW") was the San Joaquin County Sheriff at all relevant limes. The San Joaquin County Sheriff's Office is responsible for the overall operation of the San Joaquin County Jail.  As Sheriff, he was responsible for complying with state and federal law, including the United States Constitution, in operating the San Joaquin County Jail.  On August 1, 2019, Salvador Silva died resulting in his suicide on August 1, 2019, at the San Joaquin County jail. His mother, Sonja Alvarez filed suit against the County. In 2018, inmate, decedent, James Barrick and his mother, Pamela Taylor filed suit against the San Joaquin

County, alleging, among other things, that James Barrick was denied referrals to medical specialists for the treatment of long-standing health problems while at San Joaquin County Jail.

35.     In August 2015, Celestine Allen was found dead in custody in the San Joaquin County jail as well as Alex Sutherland who was found unresponsive in his cell in February 2015.  Sean Thomas Smith hanged himself in February 2012 as well as Alejandro Correa Ferreyra in January 2010. Prior to their suicide, these inmates did not receive any treatment or care for their mental illness.

41.     Sheriff WITHROW, who was aware of these prior suicides, was responsible for the promulgation of San Joaquin County Jail policies, including those related to providing adequate medical care, classification and housing of inmates, as well for the training and supervision of persons working in the San Joaquin County Jail.

42.     The San Joaquin County Sheriff's Department Detention Bureau maintained a policy on Inmate Classification. The Policy was Approved by: Sheriff WITHROW. The policy failed to insure that incoming pre-trial detainees were properly screened and treated for mental illness and drug withdrawal symptoms

43.     The Policy purports to apply during both initial classifications of an inmate after booking and prior to placement in a housing unit, as well as subsequent reclassifications.

44.     The policy provided that a record shall be maintained of each inmate's classification/custody level, housing restrictions, and housing assignments. Each inmate's classification record shall be updated with all classification related input, each (re)classification assessment and each housing unit reassignment. Inmate classification records shall contain ongoing classification information and shall thoroughly document all classification related actions in regard to each inmate during their confinement.

45.     Classification Officers' responsibilities are delineated in the policy and include, among other things, creating and maintaining the inmate record, performing initial classifications and classification reviews and making housing changes in the manner prescribed by policy.

46.     Among other things, the Policy requires that "rule violations, misconduct, non-conforming behavior, and the resultant disciplinary action(s) will be considered in classification determinations, handling requirements, housing assignments, and program eligibilities." The Policy requires further that upon identification, classification staff shall segregate all mentally disordered inmates. If an inmate appears to be a danger to themselves or to others or if they appear gravely disabled they shall be considered mentally disordered. If a professional opinion is not readily available, an inmate shall be considered mentally disordered until a professional opinion can be obtained.

47.    The Classification Policy defines High Power Inmates, Known Management Problems, Protective Custody Inmates, and Inmates with Mental Deficiency, and purports to require special care for such inmates, including Administrative Segregation, which is defined as "the physical separation of inmates from the general inmate population in order to provide and maintain the safety of inmates, staff, security of the jail facilities, and public safety,"

48.    The Classification Policy purports to govern both classification of inmates, as well as their housing. These are two different things.

49.    Sheriff WITHROW's culpability is based upon his status as the actual policymaker for the County of San Joaquin and its jail. As that policymaker, he had the power to make and enforce policies that ensured that his jail met constitutional standards including a policy that mandated that an inmate or pre-trial detainee suffering from mental illness be provided with appropriate care and that said mental illness be charted when the inmate or pre-trial detainee is moved, transferred or released to another correctional facility, which San Joaquin County did not have.

50.    Sheriff WITHROW knew that the Policy and practices in the jail were not sufficient to protect the pre-trial detainees or inmates who had mental health issues, but did nothing to change it.

51.    The lack of such a policy created a dangerous condition for all pre-trial detainees and inmates.

52.    The San Joaquin County's failure to implement such a policy was a disregard of an obvious risk of constitutional violation. The inadequacy of the Policy was likely to result in the violation of constitutional rights, that the policymakers, including WITHROW, should have known to reasonably be described as deliberately indifferent. WITHROW as a policymaker was on actual or constructive notice that the particular omission was substantially certain to result in the violation of the San Joaquin County inmates/pre-trial detainees' constitutional rights.

53.    San Joaquin County purported to have specific policies asserting the safety of inmates and staff as paramount. The Policy's stated purpose was to "establish and maintain a systematic and consistent method of classifying inmates in custody for placement into specific housing locations, taking into account each inmate's sex, age, criminal sophistication, seriousness of crime(s) charged, assaultive/non-assaultive behavior, and/or other criteria for the purpose of maintaining the safety of inmates, staff, the security of the jail facilities, and public safety." It further requires that "upon identification, classification staff shall segregate all mentally disordered inmates. If an inmate appears to be a danger to themselves or to others or if they appear gravely disabled they shall be considered mentally disordered. If a professional opinion is not readily available, an inmate shall be considered mentally disordered until a professional opinion can be obtained." Under the Classification Policy, certain classes of inmates, such as High Power

Inmates, inmates with Mental Deficiency, Known Management Problems, and Mentally Disordered Inmates, qualify for protective custody and/or Administrative Segregation. Administrative Segregation is defined as the physical separation of inmates from the general inmate population in order to provide and maintain the safely or inmates, staff, security of the jail facilities, and public safety. These inmates have been identified as being suicidal, escape risks, qualify for protective custody, assaultive toward staff or other inmates, or who by the nature of their behavior have demonstrated their potential for violence or violating facility rules.

54. Even with this policy in place, there is no question that San Joaquin County, through its Sheriff WITHROW, subjectively knew of the dangers and the problems within its own jails. WITHROW was aware that San Joaquin County Jail was unable to treat mentally ill or incompetent inmates, coupled with the suicides of mentally ill pre-trial detainees and inmates in San Joaquin County Jail prior to the death of ERNESTO ISAIAH AVALOS. As of the time of this incident, Sheriff WITHROW was aware of the prior suicides, prior to the events giving rise to this case, Avalos v. San Joaquin County, and a lawsuit was filed in the United States District Court for the Eastern District of California. In the James Barrick matter, it was specifically alleged that the San Joaquin County Jail's housing of mentally ill inmates was deliberately indifferent, like this case, and that the jail staff and the other Defendants were deliberately indifferent to mentally ill inmates, at least in part, by

maintaining exceedingly low staff-to prisoner ratios, inadequate classification procedures, and dangerous jail construction design flaws. As a result of this deliberate indifference, prisoners are not provided the care they require.

55.    There can be no doubt that San Joaquin County's classification and housing policies were inadequate.  San Joaquin County, its management, and policymakers were deliberately indifferent, negligent, and failed to meet the applicable standards of care in failing to provide adequate policies and procedures related to classification, housing and transfer of the inmates at the San Joaquin County Jail, this includes, but is not limited to, the failure to maintain classification and housing policies necessary to provide for the safety of inmates when moving or transferring to another facility.

56.    The policies that were and are in place were nearly 20 years old, outdated, and not followed, all with the knowledge of supervisory personnel. These policies explicitly refer to (and require the use of) classification software that had not been used in years prior to the events giving rise to this case.

57.    On July 25, 2021 at approximately 8:00PM, Ernesto Isaiah Avalos took his grandmother's truck.  The grandmother called Escalon Police and reported the truck stolen.  The decedent returned the truck at 11:45PM.  Escalon was arrested for stealing his grand-mother's pick-up truck, 1997 Chevy pick-up truck valued at

1  $1,500.00.  Decedent was booked into the County of San Joaquin County Jail by

2  Escalon Police, Officer Andrew Halverson.

3

4       58.      On July 26, 2021 about 19:30 hours, custody staff found Ernesto

5  Isaiah Avalos (DOB: 10/20/2001) hanging from his bunk. The officers cut Avalos

6  down and performed CPR until AMR arrived and took over care. Avalos was taken to

7  St Joseph's Medical Center, but hospital staff believed he was not going to survive the

8  suicide attempt. Decedent Avalos was set to be released the day he attempted suicide,

9  hours before he was to be officially released. Decedent Avalos was charged with

10  vehicle theft of his grandmother's truck, but the District Attorney declined to file

11  charges.

12       59.      Family members had reported that Decedent Avalos had a history

13  of opioid abuse and thefts from family members.

14       60.      Decedent AVALOS, according to inmates, was coming down

15  from Percocet and fentanyl

16       61.      Decedent AVALOS pressed the call button in his cell several

17  times and requested to be seen by a nurse for pain.

18       62.      Based on information and belief, Plaintiffs allege that Decedent

19  AVALOS was suffering from drug withdrawals and the medical staff and the nursing

20  staff, including, MENDOZA, KAUR, HARDWICK and CEDANA, failed to provide

21  decedent AVALOS with the medical treatment he needed.

63.        ERNESTO ISAIAH AVALOS was arrested by Chico Police and incarcerated as a pretrial detainee at SAN JOAQUIN COUNTY jail operated by the COUNTY and overseen by Sheriff WITHROW.

64.      At the point of processing ERNESTO ISAIAH AVALOS into the SAN JOAQUIN COUNTY Jail, Sheriff WITHROW,  and their employees, agents, and DOES 1-10 all knew or should have known about ERNESTO ISAIAH AVALOS's drug withdrawal symptoms.

65.      ERNESTO ISAIAH AVALOS reported that he needed medical attention.

66.      On multiple occasions ERNESTO ISAIAH AVALOS asked for medical attention, but the medical attention was denied.

67.      SAN JOAQUIN COUNTY, WITHROW, MENDOZA, KAUR, HARDWICK and CEDANA, SGT. IZAGUIRRE, JOHNNIE MORRIS, ANDREA LOPEZ and DOES 1-10 acted with deliberate indifference to ERNESTO ISAIAH AVALOS's medical needs: they maintained incompetent staff, were understaffed, allowed non-physician staff to make medical decisions and issue medical orders. Defendants failed to provide adequate, competent and timely safety checks and to provide treatment, security, supervision and/or access to indicated needed mental health care abandoning his care and treatment, thus enabling and contributing to AVALOS's death.

68.    Sheriff WITHROW, MENDOZA, KAUR, HARDWICK and CEDANA, SGT. IZAGUIRRE, JOHNNIE MORRIS, ANDREA LOPEZ and DOES 1-10 failed to provide ERNESTO ISAIAH AVALOS reasonable security and safety and acted with deliberate indifference to ERNESTO ISAIAH AVALOS's safety and security. .

69.    Sheriff WITHROW,  MENDOZA, KAUR, HARDWICK and CEDANA, SGT. IZAGUIRRE, JOHNNIE MORRIS, ANDREA LOPEZ and DOES 1-10 acted with deliberate indifference and ignored these hazards, thus contributing to and enabling ERNESTO ISAIAH AVALOS's death.

**(b) Defendant Supervisors Had Knowledge of Inadequacy of Suicide Prevention and Delivery of Basic Medical Care and Mental Health Care at San Joaquin County Jail and Failed to Take Corrective Action.**

70.    Prior to July 26, 2021, SAN JOAQUIN COUNTY, WITHROW, MENDOZA, KAUR, HARDWICK and CEDANA SGT. IZAGUIRRE, JOHNNIE MORRIS, ANDREA LOPEZ and DOES 1 through 10 knew or should have known of a history of years of notice of ongoing failure to provide inmates indicated and timely reasonable medical/mental health care, knew or should have known of inadequate and/or incompetent staffing, insufficient and inadequate cells and beds, incompetent and inadequate provision of health care and delivery thereof, denying access to outside the jail facility hospital or other mental health programs, failure to take

corrective measures. The number of lawsuits against the COUNTY and the evidence available from those actions is troubling and demonstrative of Defendants' years of deliberate indifference to known ongoing hazards to medically ill and mentally ill detainees and their failure to take corrective action.

71.    Based on these violations Plaintiffs request the following relief against each and every Correctional officers and corrections staff and supervisors' and DOES 1 through 10 herein, jointly and severally:

72.    As a direct and proximate result of each Defendants' acts and/or omissions as set forth above, all Plaintiffs sustained the following injuries and damages, past and future, including, but not limited to:

    a) Wrongful death of ERNESTO ISAIAH AVALOS;

    b) Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support;

    c) Emotional distress from the violations of their personal Constitutional rights, including grief, sorrow, anxiety, sleeplessness, humiliation, and indignity;

    d) Loss of enjoyment of life;

    e) All other legally cognizable special and general damages, including financial support;

f) Violations of state and federal constitutional rights; and,

g) All damages and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, California Civil Code §§ 52 and 52.1, and as otherwise allowed under California and United States statutes, codes, and common law.

73.    As a direct and proximate result of each Defendants' acts and/or omissions as set forth above, Plaintiff VANESSA AVALOS, as Successor in Interest of ERNESTO ISAIAH AVALOS, sustained the following injuries and damages, past and future, including, but not limited to:

a) Hospital and medical expenses incurred by ERNESTO ISAIAH AVALOS;

b) Coroner's fees, funeral, and burial expenses;

c) ERNESTO ISAIAH AVALOS'S loss of life, pursuant to federal civil rights law;

d) ERNESTO ISAIAH AVALOS'S conscious pain and suffering, pursuant to federal civil rights law; and,

e) All damages and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, California Civil Code § 52, and as otherwise allowed under California and United States statutes, codes, and common law.

//

//

1

2

## FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983)

3

**Deliberate Indifference to Serious Medical Needs, Health and Safety Against COUNTY OF SAN JOAQUIN; WITHROW,  MENDOZA, KAUR, HARDWICK and CEDANA; SGT. IZAGUIRRE, JOHNNIE MORRIS, ANDREA LOPEZ and DOES 1-10)**

4

5

6

74.    Plaintiffs re-allege and incorporate by reference each and every

7

8

allegation contained in this complaint, as though fully set forth here.

9

75.    Individual defendants, COUNTY OF SAN JOAQUIN; PATRICK

10

11

WITHROW, Individually;  MENDOZA, KAUR, HARDWICK and CEDANA SGT.

12

IZAGUIRRE, JOHNNIE MORRIS, ANDREA LOPEZ and DOES 1 through 10,

13

deprived ERNESTO ISAIAH AVALOS, a pre-trial detainee, of the rights,  privileges

14

15

and immunities secured by the Fourth and Fourteenth Amendments of the United

16

States Constitution, by subjecting Decedent AVALOS, or through their deliberate

17

indifference in allowing others to subject AVALOS, to the delay and denial of

18

19

medical or mental health care and/or access thereto for a serious but treatable medical

20

or mental health condition and failing to implement a policy mandating that an

21

inmate's medical/mental condition shall be charted and disclosed to the transferring

22

23

facility.

24

76.   These Defendants knew or should have known that ERNESTO ISAIAH

25

26

AVALOS needed medical attention as set forth above; Defendants knew or must

27

have known that ERNESTO ISAIAH AVALOS could not care for himself;

28

AVALOS could not seek outside jail medical care, nor advocate for his urgently needed psychiatric intervention, and/or appropriate suicide observation protocols. Defendants ignored their duty of care to ERNESTO ISAIAH AVALOS, and with their actions and inactions they caused lapses and a lack of continuum of indicated care and treatment and indicated appropriate housing, which they knew or should have known, would cause or worsen AVALOS' deteriorating mental health condition, due to his drug withdrawal.

77.   These Defendants knew or must have known that ERNESTO ISAIAH AVALOS's medical or mental health condition was serious but treatable and that ERNESTO ISAIAH AVALOS required access and delivery to urgently needed medical/mental health care, and they further had a duty to provide ERNESTO ISAIAH AVALOS reasonable security and indicated housing to accommodate his mental health condition. These Defendants knew or should have known that if not treated, ERNESTO ISAIAH AVALOS's mental health would continue to deteriorate, worsen and cause him harm and/or death.

78.   Sheriff WITHROW, and DOES 1-10, failed to promulgate and implement policies, procedures, and practices to ensure that ERNESTO ISAIAH AVALOS's, mental condition would be disclosed and charted upon transfer to a new facility, so that he would be housed in an indicated and appropriate housing unit pursuant to the laws of the State of California, pursuant to their duty and responsibility to provide

appropriate housing, safety, security and observation to ensure ERNESTO ISAIAH

AVALOS's safety and security at all times, and that the deputies responsible to

monitor, observe and provide for ERNESTO ISAIAH AVALOS's security and safety

at all times did so competently.

79.    As a result of these Defendants' deliberate indifference and/or reckless

disregard for ERNESTO ISAIAH AVALOS's security, safety, wellbeing, and

appropriate and indicated housing and observation and/or transfer to a higher level of

care and their disregard and ignoring of said inadequate and incompetent conditions

for ERNESTO ISAIAH AVALOS's needed medical care and treatment, ERNESTO

ISAIAH AVALOS suffered damages as set forth.

80.    By the actions and omissions described above, Defendants and each of

them, violated 42 U.S.C. § 1983, depriving Plaintiffs of the following clearly-

established and well-settled constitutional rights protected by the Fourth and

Fourteenth Amendments to the U .S. Constitution:

a.    The right to be free from an unreasonable ongoing seizure as a pretrial detainee

as secured by the Fourth and Fourteenth Amendments;

b.    The right to be free from deliberate indifference to his serious medical

needs while in custody as a pretrial detainee as secured by the Fourteenth

Amendment;

c.    The right to be free from wrongful government interference with

familial relationships, and Plaintiffs' right to companionship, society

and support of each other, as secured by the First and Fourteenth Amendments.

81.    Defendants subjected Plaintiffs to their wrongful conduct, depriving

Plaintiffs of rights described herein, knowingly, maliciously, and with conscious and

reckless disregard for the rights and safety of Plaintiffs (individually and on behalf of

ERNESTO ISAIAH AVALOS).

82.    Defendants subjected Plaintiffs to their wrongful conduct, depriving

Plaintiffs of rights described herein, knowingly, maliciously, and with conscious and

reckless disregard for whether the rights and safety of Plaintiffs and others would be

violated by their acts and/or omissions.

83.    As a direct and proximate result of the foregoing, Plaintiffs sustained

serious and permanent injuries and are entitled to damages, penalties, costs and

attorney fees as more specifically stated above.

## SECOND CAUSE OF ACTION
### FAILURE TO TRAIN AND SUPERVISE
### (42 U.S.C. § 1983)
### BY PLAINTIFFS AGAINST DEFENDANTS SAN JOAQUIN COUNTY; PATRICK WITHROW;  AND DOES 1 through 10 IN THEIR INDIVIDUAL CAPACITY

84.    Furthermore, on or before July 26, 2021, Defendants Sheriff

WITHROW, COUNTY OF SAN JOAQUIN, and DOES 1-10 failed to properly train,

assign, supervise, and guide their staff and medical personnel assigned to the SAN

JOAQUIN COUNTY JAIL, including but not limited to MENDOZA, KAUR,

HARDWICK and CEDANA  to take immediate measures to ensure that an inmate suffering from drug withdrawals and mentally ill and suicidal pre-trial detainee like ERNESTO ISAIAH AVALOS, be referred to a hospital or psychiatric facility for the care and treatment of the mentally disordered, or to any other available public or private treatment facility that will promote ERNESTO ISAIAH AVALOS 's speedy restoration to mental competence.

85.    Defendants Sheriff WITHROW, COUNTY OF SAN JOAQUIN and DOES 1-10 acted with deliberate indifference to their responsibility and duty to ERNESTO ISAIAH AVALOS, and their actions and/or inactions in failing to supervise their subordinates to take adequate measure to protect inmates, such as ERNESTO ISAIAH AVALOS, upon release from suicide watch; maintained an insufficient and inadequate number of safety cells/or beds, to house mentally ill inmates like ERNESTO ISAIAH AVALOS to keep them safe; maintained insufficient and inadequate monitoring and surveillance of safety cells, such as the one where they housed ERNESTO ISAIAH AVALOS; they were deliberately indifferent to the design and location of the cell where ERNESTO ISAIAH AVALOS was housed in violation of Title 15 and 24 of the Cal. Administrative Code.

86.    Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs of rights described herein, knowingly, maliciously, and with conscious and

reckless disregard for whether the rights and safety of Plaintiffs and others would be violated by their acts and/or omissions.

87.    As a direct and proximate result of the foregoing, Plaintiffs sustained serious and permanent injuries and are entitled to damages, penalties, costs and attorney fees as more specifically stated above.

## THIRD CAUSE OF ACTION
### Municipal Liability for Unconstitutional Custom or Policy
### (42 USC §1983)-MONELL
### (BY ALL PLAINTIFFS AGAINST DEFENDANT SAN JOAQUIN COUNTY)

88.    Plaintiffs reallege each and every paragraph in this Complaint as if fully set forth here.

89.    The COUNTY of SAN JOAQUIN, through its employees, including SHERIFF WITHROW, in his individual and official capacity, and DOES 6-10, each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights and serious medical needs of ERNESTO ISAIAH AVALOS. Each of these supervising Defendants either directed his or her subordinates in conduct that violated Decedent's rights, OR set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive Decedent AVALOS of his rights, OR knew his or her subordinates were engaging in acts likely to deprive Decedent of rights and failed to act to prevent his or her subordinate from engaging in such

conduct, OR disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate Decedent's rights, and in fact did cause the violation of Decedent's rights. (See, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of Decedents' rights.

90.    At all times herein mentioned, Defendants SAN JOAQUIN COUNTY, maintained a longstanding, pervasive, custom, pattern, and/or practices, and each Defendant knew that the following custom, pattern, practice or policies posed this risk of harm. Some of these customs, patterns, practices or policies include, but are not limited to, the following:

a) To deny inmates at the COUNTY'S jail access to medical/psychiatric attention, continuity of care and/or access to a higher level of care not available at the jail for seriously ill inmates;

b) To fail to properly classify, house and/or monitor inmates suffering from mental health disabilities in compliance with statutory mandates and fail to chart the inmates' mental condition/illness upon transfer to another facility;

c) To fail to provide medical or mental health care for inmates with serious psychiatric/medical needs;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

d) To fail to maintain appropriate, competent and sufficient indicated medical and mental health staffing;

e) To fail to use appropriate National and State accepted jail minimum standards, procedures and practices for handling suicidal mentally ill and/or emotionally disturbed persons;

f) To fail to institute, require, and enforce proper and adequate training supervision, policies, procedures and practices concerning handling mentally ill and/or emotionally disturbed inmates at the County Jail;

g) To fail to comply with their own policies and procedures and/ to fail to supervise to ensure implementation thereof;

h) To fail to maintain competent and adequate supervision and training of medical and custodial staff regarding mentally ill and suicidal inmates;

i) To cover-up violations of constitutional rights by any or all of the following:

1.    To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and sheriff department personnel, whereby an officer or member of the department and/or medical staff working in the correctional system does not provide adverse information against a fellow deputy or member of the department or co-worker; and,

2.    To use or tolerate inadequate, deficient, and improper procedures for

handling, investigating, and reviewing complaints of misconduct,

including claims made under California Government Code § 910 et seq.

91.    The unconstitutional customs and practices of Defendants were

approved, tolerated and/or ratified by policy making officers for SAN JOAQUIN

COUNTY.

92.    The aforementioned customs, policies, practices, and procedures were a

moving force and/or a proximate cause of the deprivations of Plaintiffs' clearly-

established and well-settled constitutional rights in violation of 42 U.S.C. §1983, as

more fully set forth above.

93.    As a direct and proximate result of the unconstitutional above alleged

actions, omissions, customs, policies, practices and procedures as described above,

Plaintiffs sustained serious and permanent injuries and are entitled to damages as set

forth above.

**FOURTH CAUSE OF ACTION**
**(VIOLATION OF CALIFORNIA GOVERNMENT CODE § 845.6)**
**PLAINTIFF AGAINST DEFENDANTS  COUNTY OF SAN JOAQUIN**
**WITHROW,  MENDOZA, KAUR, HARDWICK and CEDANA DOES 1-10**

96.    Plaintiffs re-allege and incorporate by reference the allegations contained

in this complaint, as though fully set forth herein.

97.       Defendants COUNTY OF SAN JOAQUIN and its employees,

WITHROW,  MENDOZA, KAUR, HARDWICK and CEDANA and Does 1-10 knew

or had reason to know that ERNESTO ISAIAH AVALOS was in need of immediate

and a higher level medical and psychiatric care, treatment, and observation and

monitoring, that he required special housing and security – including being placed on

suicide watch and on suicide precautions – for his own safety and well-being, and each

Defendant failed to take reasonable action to summon and/or to provide ERNESTO

ISAIAH AVALOS access to such medical care and treatment and/or provide him

housing accommodations necessary for him under such circumstances. Each such

individual Defendant, employed by and acting within the course and scope of his or her

employment with Defendant COUNTY, knowing and/or having reasons to know this,

failed to take reasonable action to summon and/or provide ERNESTO ISAIAH

AVALOS access to such care, treatment, and medically appropriate housing in

violation of California Government Code § 845.6.

98.    As a proximate cause of the aforementioned acts and omissions of –

and attributable under Government Code sections 845.6 and 815.2 to – all

Defendants, Plaintiffs were injured as set forth above and is entitled to all damages

allowable under California law. Plaintiffs sustained serious and permanent injuries

and are entitled to damages, penalties, costs, and attorneys' fees as set forth herein.

## FIFTH CAUSE OF ACTION
### (NEGLIGENCE-Wrongful Death)
**(Plaintiffs Against Defendants SHERIFF PATRICK WITHROW;  MENDOZA,
KAUR, HARDWICK and CEDANA; SGT. IZAGUIRRE, JOHNNIE MORRIS,
ANDREA LOPEZ and DOES 1-10)**

99.     Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

100.    At all times, each Defendants owed Plaintiffs the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

101.    At all times, each Defendants owed Plaintiffs the duty to act with reasonable care. These general duties of reasonable care and due care owed to Plaintiffs by all Defendants include but are not limited to the following specific obligations:

a) To provide, or have provided sufficient, competent, prompt and appropriate psychiatric/medical care to ERNESTO ISAIAH AVALOS;

b) To provide safe and appropriate jail custody for ERNESTO ISAIAH AVALOS, including reasonable classification, monitoring, housing and charting at the time of transfer;

c) To use generally accepted law enforcement and jail procedures that are reasonable and appropriate for Plaintiff's status as a mentally ill, suicidal and/or emotionally disturbed person;

d) To refrain from abusing their authority granted them by law;

e) To refrain from violating Plaintiffs' rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

102.    Additionally these general duties of reasonable care and due care owed to Plaintiffs by Defendants and each them including DOES 1-10, include but are not limited to the following specific obligations:

a) To properly and reasonably hire, supervise, train, retain, investigate, monitor, evaluate, and discipline each person (i) who was responsible for providing psychiatric/medical care for ERNESTO ISAIAH AVALOS ; (ii) who was responsible for the safe and appropriate jail custody of ERNESTO ISAIAH AVALOS ;  (iii) who was responsible for properly and reasonably classifying,  housing, and monitoring ERNESTO ISAIAH AVALOS ; (iv) who denied ERNESTO ISAIAH AVALOS medical attention or access to medical care and treatment; and/or (vi)who failed to summon necessary and appropriate medical care;

b) To properly and adequately hire, supervise, train, retain, investigate, monitor, evaluate, and discipline their employees, agents, and/or law enforcement officers to ensure that those employees/agents/officers act at all times in the public interest and in conformance with law;

c) To make, enforce, and at all times act in conformance with policies and customs that are lawful and protective of individual rights, including Plaintiffs' rights.

d) To refrain from making, enforcing, and/or tolerating the wrongful policies and customs set forth herein.

103.    By the acts and omissions set forth more fully in the paragraphs above, Defendants acted negligently and breached their duty of due care owed to ERNESTO ISAIAH AVALOS, which foreseeably resulted in the suffering of damages by ERNESTO ISAIAH AVALOS and Plaintiffs of the loss of their father/son.

104.    Defendants, through their acts and omissions, breached the aforementioned duties owed to ERNESTO ISAIAH AVALOS and Plaintiffs.

105.    Defendant SAN JOAQUIN COUNTY is vicariously liable pursuant to California Government Code section 815.2.

106.    As a direct and proximate result of Defendants' negligence, Plaintiffs sustained injuries and damages, and against each and every Defendant are entitled to relief as described above.

### SIXTH CAUSE OF ACTION
### (MEDICAL NEGLIGENCE-Wrongful Death)
### (Plaintiffs Against Defendants SAN JOAQUIN COUNTY, WITHROW, MENDOZA, KAUR, HARDWICK and CEDANA; DOES 1-10)

107.    Plaintiffs re-allege and incorporate by reference the allegations Contained in this complaint, as though fully set forth herein.

108.    ERNESTO ISAIAH AVALOS  was under the care and treatment of Defendants WITHROW,  MENDOZA, KAUR, HARDWICK and CEDANA  and SAN JOAQUIN COUNTY who were required to examine, treat, monitor, prescribe for and care for him and to provide him with medical attention for the mentally ill and psychiatric services and treatment. Defendants WITHROW,  MENDOZA, KAUR,

HARDWICK and CEDANA and DOES 1-10, acting within the scope and course of their employment with Defendants SAN JOAQUIN COUNTY negligently, carelessly and unskillfully cared for, attended, handled, controlled; failed to monitor and follow-up; abandoned; failed to classify, failed to appropriately diagnose and/or refer ERNESTO ISAIAH AVALOS to specialist mental/medical care providers; negligently failed to provide physician, psychiatric, psychological care; carelessly failed to detect, monitor, and follow-up with his condition; and negligently, carelessly and unskillfully failed to possess and exercise that degree of skill and knowledge ordinarily possessed and exercised by others in the same profession and in the same locality as Defendants for the benefit of their patient and dependent pre-trial detainee ERNESTO ISAIAH AVALOS .

109.    Defendant supervisors and each of them failed to supervise, train and monitor their subordinates, to maintain proper supervision, classification and staffing, to timely refer ERNESTO ISAIAH AVALOS for medical, hospital and/or psychiatric care, failed to provide adequate and competent staffing, and to ensure the care and treatment ordered for ERNESTO ISAIAH AVALOS was provided.

110.    Plaintiffs further allege that other presently unknown supervisory personnel named as DOE defendants, including agents and employees of SAN JOAQUIN COUNTY, and defendants themselves, failed to conduct appropriate investigatory procedures, and/or follow policies and protocols, including but not

limited to involuntary mental health treatment and transfer, implementing

interventions and assessment re: increased risk of suicidal behaviors, evaluation and

documentation for risk factors so appropriate interventions may be initiated, to

determine the need to obtain medical and psychiatric services for ERNESTO

ISAIAH AVALOS while in Defendants' care, custody, and control.

111.    As a direct and legal result of the aforesaid negligence and carelessness

of Defendants' actions and omissions, Plaintiffs sustained injuries and damages, and

against these Defendants, and each of them, are entitled to compensatory damages as

described above and as applicable to this claim for Medical Negligence, to be

proven at time of trial.

**SEVENTH CAUSE OF ACTION**
**SURVIVAL CLAIM/WRONGFUL DEATH**
**DENIAL OF SUBSTANTIVE DUE PROCESS RIGHT TO FAMILIAL**
**RELATIONSHIP**
**(42 U.S.C. § 1983)**
**BY VANESSA AVALOS, individually; and as Successor in Interest**
**AGAINST ALL DEFENDANTS.**

112.    Plaintiffs, VANESSA AVALOS, decedent ERNESTO ISAIAH

AVALOS's biological mother, asserts wrongful death claims individually under

California Code of Civil Procedure section 377.60, et seq and realleges each and

every paragraph in this Complaint as if fully set forth herein.

113.    All of the acts of Defendants and the persons involved were done

under color of state law.

114.   The acts and omissions of each Defendant deprived VANESSA

AVALOS, of rights, privileges, and immunities secured by the Constitution and laws

of the United States, including but not limited to the Fourteenth Amendment by,

among other things, depriving Plaintiffs of their right to a familial relationship with

their son/father ERNESTO ISAIAH AVALOS  without due process of law by their

deliberate indifference in denying ERNESTO ISAIAH AVALOS  access to medical

and mental health care.

115.   The Defendants, SAN JOAQUIN COUNTY, WITHROW,

WITHROW,  MENDOZA, KAUR, HARDWICK and CEDANA, SGT.

IZAGUIRRE, JOHNNIE MORRIS, ANDREA LOPEZ and DOES 1 through 10 and

the other involved agents and employees acted pursuant to expressly adopted official

policies or longstanding practices or customs of SAN JOAQUIN COUNTY. These

include policies and longstanding practices or customs of failing to provide persons in

pretrial custody who are mentally ill access to medical and mental health care as

stated above and incorporated herein.

116.   In addition, the training policies of SAN JOAQUIN Defendants were

not adequate to train its deputies, agents and employees to handle the usual and

recurring situations with which they must deal with, including but not limited to

encounters with individuals in pretrial custody with mental illness. These defendants

and each of them knew that its failure to adequately train its deputies, agents and

employees to interact with individuals suffering from mental illness and/or withdrawing from drug addiction made it highly predictable that its deputies, agents and employees would engage in conduct that would deprive persons such as ERNESTO ISAIAH AVALOS , and VANESSA AVALOS, of their rights. These Defendants were thus deliberately indifferent to the obvious consequences of their failure to train their deputies, agents and employees adequately.

117.    Defendants SAN JOAQUIN COUNTY's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Plaintiffs VANESSA AVALOS and ERNESTO ISAIAH AVALOS by each individual Defendant's official policies and/or longstanding practices or customs are so closely related to ERNESTO ISAIAH AVALOS 's injuries and death and thus the deprivation of the rights of Plaintiffs VANESSA AVALOS and ERNESTO ISAIAH AVALOS as to be the moving force causing those injuries.

118.    Sheriff WITHROW, a final policymaker for SAN JOAQUIN COUNTY, ratified the actions and omissions of the medical staff Defendants and the other involved officers in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.

119.    As a direct and proximate result of the foregoing wrongful acts, Defendants, and each of them, Plaintiffs sustained general damages, medical bills,

including grief, emotional distress, loss of life, pre-death pain and suffering, loss of comfort and society, in an amount in accordance with proof.

120.    In doing the foregoing wrongful acts and omissions, Defendants, and each of them, acted in reckless and callous disregard for the constitutional rights of Plaintiffs VANESSA AVALOS and ERNESTO ISAIAH AVALOS. The wrongful acts, and each  of  them, were  willful,  oppressive, fraudulent,  and malicious, thus warranting the award of punitive damages against each individual Defendant (but not the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct.

## EIGHTH CAUSE OF ACTION

**(42 U.S.C. § 1983) Failure to Protect**
**((Plaintiffs Against Defendants San Joaquin County, Sheriff Withrow,**
**SGT. IZAGUIRRE, JOHNNIE MORRIS, ANDREA LOPEZ and  DOES 1-10)**

121.    Plaintiffs re-allege and incorporates by reference the allegations contained in this complaint, as though fully set forth herein.

122.    Under California Penal Code Section 6030, Defendant WITHROW, as facility administrator, had a duty to develop a comprehensive suicide prevention program to identify, monitor and provide treatment to those inmates who present a suicide risk.  Furthermore, Defendant WITHROW had a duty to include the following measures as a part of the Suicide Prevention Program mandated by Title 15: (a) Suicide prevention training for all staff that have direct contact with inmates; (b) Intake

1   screening for suicide risk immediately upon intake and prior to housing assignment; (c)

2
3   Provisions facilitating communication among arresting and/or transporting officers,

4   facility staff, medical and mental health personnel in relation to suicide risk.

5       123.    At all material times, Defendant WITHROW and DOE Defendants 1

6
7   through 10 owed ERNESTO ISAIAH AVALOS the duty to develop and effectively

8   implement a Suicide Prevention Plan, which included facilitating communication

9   among the medical staff to diagnose suicidal ideation. The Defendants' failure to

10
11   develop and implement an effective Suicide Prevention Plan, which included

12   communicating with the medical staff and mental health staff in relation to AVALOS'

13   medical condition, including suicide risk, was an act of deliberate indifference which

14
15   deprived ERNESTO ISAIAH AVALOS of the medical care he needed.

16       124.    At all material times, Defendants WITHROW in his Individual Capacity;

17   and Correctional Staff DOES 1-10 were responsible to implement, supervise, and

18
19   perform Title 15 safety checks of ERNESTO ISAIAH AVALOS under a Suicide

20   Prevention Plan, which Defendants failed to perform on July 26, 2021.

21       125.    Defendant WITHROW in his Individual Capacity; and Correctional

22
23   Staff DOES 1-10 defendants and DOES 1-10 acted with deliberate indifference to

24   ERNESTO ISAIAH AVALOS's safety by failing to provide and perform the required

25   TITLE 15 safety checks; Defendants failed to provide adequate, competent and timely

26
27   safety checks and to provide treatment, security, supervision and/or access to indicated

28

needed mental health care abandoning their care and treatment, thus enabling and contributing to AVALOS' death.

126.    These general duties of reasonable care and due care owed to ERNESTO ISAIAH AVALOS by all Defendants include, but are not limited, to the following specific obligations:

a.    To provide safe and appropriate prison custody for ERNESTO ISAIAH AVALOS, including reasonable classification, monitoring, and housing, including placing him in an adequately monitored cell away from violent and combative inmates;

b.    To obey Court Orders for the care and safety of inmates, such as ERNESTO ISAIAH AVALOS;

c.    To summon necessary and appropriate medical care for ERNESTO ISAIAH AVALOS;

d.    To use generally accepted law enforcement and prison procedures that are reasonable and appropriate for Plaintiffs' status as a mentally ill and/or emotionally disturbed person;

e.    To conduct intake screening for suicide risk immediately upon intake and prior to housing assignment;

f.    To facilitate communication and actually communicate with the transporting agency and the transporting agency's medical and mental health personnel with

respect to AVALOS' suicide risk and history;

g.     To refrain from abusing their authority granted to them by law; and,

h.     To refrain from violating Plaintiffs' and ERNESTO ISAIAH AVALOS 's rights

guaranteed by the United States and California Constitutions, as set forth above,

and as otherwise protected by law.

127.     By the acts and omissions set forth more fully in the paragraphs above,

Defendants acted negligently and breached their duty of due care owed to ERNESTO

ISAIAH AVALOS, which foreseeably resulted in the suffering of damages by

ERNESTO ISAIAH AVALOS and Plaintiffs.

## NINTH CAUSE OF ACTION
### (Violation of Civil Code § 52.1) – Survival Claim
### BY VANESSA AVALOS, individually;  and as Successor in Interest
### AGAINST ALL DEFENDANTS

128.     Plaintiff realleges each and every paragraph in this complaint as if fully

set forth here.

129.     Plaintiff brings the claims in this cause of action as survival claims

permissible under California law, including Cal. Code of Civ. Proc. Section 377.20 et.

seq.

130.     By their acts, omissions, customs, and policies, DEFENDANTS, SAN

JOAQUIN COUNTY, WITHROW, WITHROW,  MENDOZA, KAUR, HARDWICK

and CEDANA, SGT. IZAGUIRRE, JOHNNIE MORRIS, ANDREA LOPEZ and

DOES 1 through 10, each Defendant acting in concert/conspiracy, as described above,

while ERNESTO ISAIAH AVALOS  was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated Plaintiff's and ERNESTO ISAIAH AVALOS 's rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

a. The right to be free from objectively unreasonable treatment and deliberate indifference to ERNESTO ISAIAH AVALOS's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

b. Decedent's and Plaintiff VANESSA AVALOS's right to familial association as secured by the First and/or Fourteenth Amendments.

c. The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1;

d. The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43; and

e. The right to emergency medical care as required by California Government Code §845.6.

131.    Defendants' violations of Plaintiff's and Decedent's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.

Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of ERNESTO ISAIAH AVALOS's rights as described above, Defendants violated Decedent's rights by the following conduct constituting threat, intimidation, or coercion:

a. With deliberate indifference to ERNESTO ISAIAH AVALOS's serious medical needs, suffering, and risk of grave harm including death, depriving ERNESTO ISAIAH AVALOS's of necessary, life-saving care for his medical and/or psychiatric needs;

b. Subjecting ERNESTO ISAIAH AVALOS's to ongoing violations of his rights to prompt care for his serious medical and psychiatric needs over days, causing immense and needless suffering, intimidation, coercion, and endangering his life and well-being;

c. Requiring psychiatric patients in at high risk of suicide to remain in jail without adequate supervision, competent mental health treatment, or any psychiatric treatment or treatment plan whatsoever, instead of allowing them to receive necessary emergency medical and psychiatric care;

d. Deliberately causing the provision of inadequate and incompetent medical and mental health care to San Joaquin County jail detainees and inmates;

e. Requiring LVN's, psychiatric technicians, and associate social workers to work outside their legal scope of practice, and conduct assessments, triage, and

make medical and housing decisions for patients, including ERNESTO ISAIAH AVALOS, they are not competent to make;

f. Choosing not to provide the required constant observation for inmates at high risk of suicide who are housed in solitary confinement in segregated cells;

g. Housing severely mentally ill inmates, who are receiving no psychiatric care and are at high risk of suicide, in solitary confinement in segregated cells;

The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of Decedent's rights, or to any legitimate and lawful jail or law enforcement activity.

132. Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

133. Further, each Defendant violated Plaintiff's and Decedent's rights with the specific intent and purpose to deprive them of their enjoyment of those rights and of the interests protected by those rights.

134. Defendants COUNTY and Does 1 – 10 are vicariously liable for the violation of rights by their employees and agents.

135. Defendant County is vicariously liable pursuant to California Government Code §815.2.

136. As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiff's and Decedent's rights under the United States and California Constitutions, Plaintiff (as successor in interest for Decedent) sustained injuries and damages, and against each and every Defendant is entitled to relief as set forth above, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, treble damages and civil penalties

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief against each and every Defendant herein, jointly and severally:

1.      Compensatory damages in an amount according to proof, which is fair, just, and reasonable;

2.      Punitive damages under 42 U.S.C. § 1983, federal law, and California law, in an amount according to proof and which is fair, just, and reasonable against the individual Defendants only;

3.      All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20 et seq., 377.60 et seq., and as otherwise may be allowed by California and/or federal law;

4.      For such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiffs hereby respectfully demand a jury trial in this action, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

1

2   Dated: May 11, 2022        **CURD, GALINDO & SMITH LLP**

3
                                   */s/ Alexis Galindo*
4                                  ALEXIS GALINDO
                                   Attorneys for Plaintiffs
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# SAN JOAQUIN COUNTY

## PUBLIC HEALTH SERVICES
### STOCKTON, CALIFORNIA

**CERTIFICATE OF DEATH**

STATE FILE NUMBER: 3082021192015

LOCAL REGISTRATION NUMBER: 3202139003883

| 1. NAME OF DECEDENT—FIRST | 2. MIDDLE | 3. LAST |
|---|---|---|
| ERNESTO | ISAIAH | AVALOS |

AKA, ALSO KNOWN AS – Include full AKA (FIRST, MIDDLE, LAST)

| 4. DATE OF BIRTH mm/dd/ccyy | 5. AGE Yrs. | IF UNDER ONE YEAR | IF UNDER 24 HOURS | 6. SEX |
|---|---|---|---|---|
| 10/20/2001 | 19 | Months / Days | Hours / Minutes | M |

| 8. WAS DECEDENT EVER IN U.S. ARMED FORCES? | 12. MARITAL STATUS AT TIME OF DEATH | 7. DATE OF DEATH mm/dd/ccyy | 8. HOUR 24 Hrs |
|---|---|---|---|
| 9. BIRTH STATE/FOREIGN COUNTRY: CA | 10. SOCIAL SECURITY NUMBER | 11. EVER IN U.S. ARMED FORCES? No | NEVER MARRIED | 07/28/2021 | 1720 |

| 13. EDUCATION – Highest Level/Degree | 14/15. WAS DECEDENT HISPANIC/LATINO/A/SPANISH? If yes, see worksheet on back | 16. DECEDENT'S RACE – Up to 3 races may be listed (see worksheet on back) |
|---|---|---|
| ND | X YES HISPANIC / NO | HISPANIC |

| 17. USUAL OCCUPATION – Type of work for most of life. DO NOT USE RETIRED | 18. KIND OF BUSINESS OR INDUSTRY (e.g. grocery store, road construction, employment agency, etc.) | 19. YEARS IN OCCUPATION |
|---|---|---|
| LANDSCAPER | LANDSCAPING | 2 |

| 20. DECEDENT'S RESIDENCE (Street and number, or location) |
|---|
| 845 SOUTH LEE AVENUE |

| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | 24. YEARS IN COUNTY | 25. STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| LODI | SAN JOAQUIN | 95240 | 19 | CA |

| 26. INFORMANT'S NAME, RELATIONSHIP | 27. INFORMANT'S MAILING ADDRESS (Street and number, or rural route number, city or town, state and zip) |
|---|---|
| JOEL CRUZ JR., FATHER | 1820 BAKER AVENUE ESCALON, CA 95320 |

| 28. NAME OF SURVIVING SPOUSE/SRDP—FIRST | 29. MIDDLE | 30. LAST (BIRTH NAME) |
|---|---|---|
| | | |

| 31. NAME OF FATHER/PARENT—FIRST | 32. MIDDLE | 33. LAST | 34. BIRTH STATE |
|---|---|---|---|
| JOEL | | CRUZ JR | CA |

| 35. NAME OF MOTHER/PARENT—FIRST | 36. MIDDLE | 37. LAST (BIRTH NAME) | 38. BIRTH STATE |
|---|---|---|---|
| VANESSA | | AVALOS | CA |

| 39. DISPOSITION DATE mm/dd/ccyy | 40. PLACE OF FINAL DISPOSITION |
|---|---|
| 08/10/2021 | CHEROKEE MEMORIAL PARK HWY-99 & E HARNEY LANE, LODI, CA 95240 |

| 41. TYPE OF DISPOSITION(S) | 42. SIGNATURE OF EMBALMER | 43. LICENSE NUMBER |
|---|---|---|
| BU | ► VICTORIA MONFORTE | EMB9080 |

| 44. NAME OF FUNERAL ESTABLISHMENT | 45. LICENSE NUMBER | 46. SIGNATURE OF LOCAL REGISTRAR | 47. DATE mm/dd/ccyy |
|---|---|---|---|
| CHEROKEE MEMORIAL FUNERAL HOME | FD1672 | ► MAGGIE S. PARK MD | 08/03/2021 |

| 101. PLACE OF DEATH | 102. IF HOSPITAL, SPECIFY ONE | 103. IF OTHER THAN HOSPITAL, SPECIFY ONE |
|---|---|---|
| ST. JOSEPH'S MEDICAL CENTER | X | |

| 104. COUNTY | 105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location) | 106. CITY |
|---|---|---|
| SAN JOAQUIN | 1800 NORTH CALIFORNIA STREET | STOCKTON |

| 107. CAUSE OF DEATH | | 108. DEATH REPORTED TO CORONER? |
|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) | (a) HANGING | Time interval between onset and death |
| Sequentially list conditions, if any, leading to cause listed on line (a). Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST | (b) | DAYS |
| | (c) | 2021-2683 |
| | (d) | |

| 111. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 | 109. BIOPSY PERFORMED? |
|---|---|
| NONE | X |

| 112. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 111? (If yes, list type of operation and date.) | 110. AUTOPSY PERFORMED? |
|---|---|
| NO | X |

| | 113. WAS CASE REFERRED TO CORONER? |
|---|---|
| | X |

| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED | 115. SIGNATURE AND TITLE OF CERTIFIER | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
|---|---|---|---|
| Decedent Attended Since / Decedent Last Seen Alive | | | |

| 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE |
|---|
| |

| 119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED | MANNER OF DEATH | 120. INJURED AT WORK? | 121. INJURY DATE mm/dd/ccyy | 122. HOUR 24 Hours |
|---|---|---|---|---|
| | Natural / Accident / Suicide X / Could not be determined / Pending Investigation | YES / NO X | 07/26/2021 | 1932 |

| 123. PLACE OF INJURY (e.g. home, construction site, wooded area, etc.) |
|---|
| DETENTION FACILITY |

| 124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury) |
|---|
| DISCOVERED HANGING FROM BUNK |

| 125. LOCATION OF INJURY (Street and number, or location, and city, and zip) |
|---|
| 7000 MICHAEL CANLIS BLVD., FRENCH CAMP, CA 95231 |

| 126. SIGNATURE OF CORONER / DEPUTY CORONER | 127. DATE mm/dd/ccyy | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER |
|---|---|---|
| JULIE D MORTENSON | 07/29/2021 | JULIE D MORTENSON, DEP CORONER |

| STATE REGISTRAR | A B C D E | FAX AUTH. | CENSUS TRACT |
|---|---|---|---|

## CERTIFIED COPY OF VITAL RECORDS

STATE OF CALIFORNIA }
COUNTY OF SAN JOAQUIN } SS

DATE ISSUED **SEP 09 2021**

This is a true and exact reproduction of the document officially registered and placed on file with San Joaquin County Public Health Services.



MAGGIE S. PARK, M.D.
LOCAL REGISTRAR

*000913723*

This copy not valid unless prepared on engraved border displaying date and signature of Registrar.

